STATE of Rhode Island ex rel. TOWN
OF MIDDLETOWN

v.

Margaret B. WATSON.

No. 96–434–M.P.

Supreme Court of Rhode Island.

July 8, 1997.

Francis S. Holbrook, II, Newport, Aaron L. Weisman, Providence, for Plaintiff.

David P. Kerins, Newport, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER and FLANDERS, JJ.

## OPINION

PER CURIAM.

This case came before the Supreme Court on May 7, 1997, pursuant to an order that directed both parties to show cause why the issues raised by this petition for certiorari should not be summarily decided. The State of Rhode Island ex rel. Town of Middletown sought our review of a decision in which the District Court granted the motion of the respondent, Margaret B. Watson, to suppress the results of a breathalyzer test. After hearing the arguments of counsel and after reviewing the memoranda of the parties, this Court is of the opinion that cause has not been shown, and the petition will be decided at this time.

The respondent was arrested by Middletown police on June 3, 1996, and charged with driving under the influence of liquor, on the basis of police observations of her operation of her motor vehicle, the results of field sobriety tests, and a breathalyzer test. Prior to trial she moved to suppress the breathalyzer results on the ground that the officer who administered the test, Officer John T. Dring (Dring), was not properly certified. The conditions under which breathalyzer results may

be admitted in a criminal trial are set forth in G.L.1956 § 31–27–2(c). Subsection (c)(5) of this statute directs in pertinent part that "breathalyzer operators shall be qualified and certified by the department of health within three hundred sixty-five (365) days of the test." Rules promulgated by the Rhode Island Department of Health (department) require the department to certify "only those individuals who present evidence of satisfactory completion of a course of training for Breath Analysis Testing approved by the Department." R31–27–ALCH Section 7.C.1.

Prior to March 3, 1995, the department's rules also provided that certified breathalyzer operators could "maintain certification" by being "qualified and recertified by the Department within 365 days." R31–27–ALCH Section 7.D.2(a) (amended 1995). On March 3, 1995, the department amended Section 7.D.2(a) to eliminate the 365–day requirement. In addition, a new paragraph was added stating: "Notwithstanding paragraph D.2.(a), operators whose certifications expire beyond 730 days shall satisfactorily complete a course of training for Breath Analysis Testing approved by the Department and the satisfactory accomplishment of an examination." Consequently, an operator whose certification has lapsed for less than two years may obtain recertification without repeating the training demanded of new operators. An operator whose certification has lapsed for more than two years is required to repeat this training.

It is undisputed that Dring was initially certified as a breathalyzer operator on May 14, 1993, and that he was recertified on February 22, 1996. Dring's initial certification thus lapsed on May 14, 1994. The recertification on February 22, 1996, however, occurred within 730 days of the initial lapse and therefore fell within the scope of the amended rule. It follows that Dring was a certified breathalyzer operator on June 3, 1996, the date he performed the breathalyzer test on respondent, because this date was within 365 days of the recertification. *See* § 31–27–2(c)

(certification must have occurred within 365 days of breathalyzer test).

The respondent has sought to avoid this result by arguing that Dring's recertification on February 22, 1996, somehow involved an impermissible retroactive application of the amended rule. We disagree. Section 7.D.2 was amended on March 3, 1995, and Dring was recertified on February 22, 1996. The recertification therefore involved only the prospective application of the amendments, and consequently we concur with the department's determination that as of February 22, 1996, Dring was qualified to perform breathalyzer tests.

■ The respondent has also contended that the amended regulations were invalidly adopted on an emergency basis. Although the Rhode Island Administrative Procedures Act (act), G.L.1956 chapter 35 of title 42, requires an agency to give twenty days' notice before adopting, amending, or repealing a rule, § 42–35–3(a)(1),[1] the act also provides for an emergency procedure that bypasses the notice requirement:

> "If an agency finds that an imminent peril to the public health, safety, or welfare requires adoption of a rule upon less than twenty (20) days' notice, and states in writing its reasons for that finding, it may proceed without prior notice or hearing." Section 42–35–3(b).[2] *See also* § 42–35–4(b)(2) (providing for the filing of emergency rules).

It is undisputed that the emergency rules were adopted in response to a ruling of the District Court that cast into doubt the department's procedure for certifying breathalyzer operators. In its "Statement of Need for Emergency Action," the department explained, "Filing is necessary to establish approved preliminary breath testing instruments and procedures for testing breathalyzers, for reliable quantitative determinations and effective administrative practices to protect the safety and welfare of the public." We are of the opinion that the de-

---

**1.** This section was amended by P.L.1995, ch. 300, § 1, to provide for thirty days' notice, effective July 5, 1995.

**2.** This section was amended by P.L.1995, ch. 300, § 1, to replace the words "twenty (20) days' notice" with the words "thirty (30) days' notice," effective July 5, 1995.

**183**

partment responded to a legitimate peril in accordance with the statute. Without doubt, the state's ability to enforce its drunk-driving laws is a matter of the highest concern for the health, safety, and welfare of the public.

For these reasons we grant the state's petition for certiorari, quash the decision of the District Court, and remand this case for trial to the District Court with our decision endorsed thereon.

GOLDBERG, J., did not participate.